# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| RODNEY A. PILOT, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) CIVIL ACTION 13-0628-WS-M |
| | ) |
| ALESCO PREFERRED FUNDING XV, | ) |
| LTD., et al., | ) |
| | ) |
| Appellees. | ) |

## ORDER

This matter is an appeal of a final order of the Bankruptcy Court entering summary judgment in favor of the appellees and against the appellant. The parties have filed briefs in support of their respective positions, (Docs. 7, 9, 10), and the appeal is ripe for resolution. After careful consideration, the Court concludes that the bankruptcy ruling is due to be affirmed.[1]

## BACKGROUND

The Debtor is a bank holding company. The Debtor's principal asset was a bank in Baldwin County ("the Bank"), the Debtor's wholly-owned subsidiary. The parties herein are the Debtor's only creditors. The central issue is the creditors' relative priority vis-à-vis proceeds from the sale of the Bank.

On December 22, 2006, the Debtor issued certain Debt Securities, in the original principal amount of $7,450,000, to its wholly-owned subsidiary ("the Trust"), the trustee of which is an appellee herein. The Trust contemporaneously issued trust preferred securities in the original principal amount of $7,250,000 to the other appellee herein ("Alesco"). As of commencement of the Debtor's

---

[1] The appellant's request for oral argument, (Doc. 8), construed as a motion for such relief, is **denied**. *See* Bankr. Rule 8012; Local Rule 7.3.

Chapter 11 case, its obligations to the appellees on account of the Debt Securities exceeded $8 million.

In December 2008, the Debtor borrowed $1.5 million from the appellant and executed a promissory note ("the Note") in that amount. To secure the Note, the Bank granted the appellant an accommodation mortgage ("the Mortgage") on two parcels of realty on which bank branches were situated. Approximately $1.7 million remains outstanding.

Pursuant to the liquidation plan, the Debtor sold its equity in the Bank, the proceeds of which (largely representing the value of the appellant's collateral) were placed in a liquidating trust to await distribution once the relative priority of the creditors' claims is resolved. The trust contains approximately $3 million, making the priority determination critical.

The creditors filed competing motions for summary judgment. In general, the appellees argued that, pursuant to the terms of the document governing the Debt Securities ("the Indenture") and the Note, their claims have priority. In general, the appellant argued that the Indenture and Note give his claim priority; that, even if this is not so, the Note and Mortgage give his claim priority; and that, even if this is not so, an agreement between the parties prior to the sale of the Bank ("the Intercreditor Agreement") gives his claim priority.

The Bankruptcy Judge ruled that "the language of the Indenture and Pilot Note clearly establish that the Debt Securities are senior indebtedness and the Accommodation Mortgage and Intercreditor Agreement do nothing to alter this priority." (Doc. 1 at 733). Accordingly, she granted the appellees' motion for summary judgment, denied the appellant's motion for summary judgment, and entered a judgment that the appellees "are entitled to payment in full of their debt prior to any repayment" of the appellant from the sale proceeds. (*Id*. at 724, 738). She subsequently denied the appellant's motion to alter, amend or vacate but granted his motion to certify the judgment as final so as to allow this appeal. (*Id*. at 767).

On appeal, the appellant argues that the Bankruptcy Judge erred: (1) in failing to find that the Note is "Senior Indebtedness" under the Indenture; (2) in finding that the appellant in the Note agreed that the appellees were entitled to full satisfaction of their debt before the appellant receives any payment on his debt;[2] (3) in failing to find that the Note and Mortgage allow the appellant to pursue his remedies against the collateral (the Bank's realty and its proceeds); (4) in failing to consider evidence that the appellant, the Debtor and the Bank intended the Note and Mortgage to allow him to pursue his remedies under the Mortgage against the collateral; (5) in basing her decision in part on the appellees' status as third-party beneficiaries under the Note; and (6) in finding that the Intercreditor Agreement does not change the priority of the appellant's claim. (Doc. 7 at 2-3).[3]

**DISCUSSION**

The parties agree that the Court is to review the Bankruptcy Judge's grant or denial of summary judgment de novo. (Doc. 7 at 8; Doc. 9 at 14-15). *In re: Optical Technologies, Inc.*, 246 F.3d 1332, 1335 (11th Cir. 2001) ("[W]e take this opportunity to make clear that both the district court and this Court review a bankruptcy court's entry of summary judgment de novo."). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[4] The Bankruptcy Judge concluded that there are no genuinely disputed material facts, (Doc. 1 at 733), and the parties agree. (Doc. 7 at 8; Doc. 9 at 15).

---

[2] The appellant lists this as his final issue, but it is more appropriately considered second.

[3] Because the parties' briefs include unnumbered cover pages and tables of contents using Roman numerals, their pagination does not match that assigned by CM/ECF. The Court utilizes the CM/ECF page notation.

[4] Rule 56 "applies in adversary proceedings." Bankr. R. 7056.

3

## I. The Note Is Not "Senior Indebtedness" Under the Indenture.

The Indenture provides that payment on the Debt Securities is generally "subordinated … to the prior payment in full of all 'Senior Indebtedness' of the [Debtor], whether outstanding at the date of this Indenture or thereafter incurred." (Doc. 1 at 404). "Senior Indebtedness" is a defined term, the definition reading in pertinent part as follows:

> "Senior Indebtedness" means, with respect to the [Debtor], (i) the principal, premium, if any, and interest in respect of (A) indebtedness of the [Debtor] for money borrowed and (B) indebtedness evidenced by securities, debentures, notes, bonds or other similar instruments issued by the [Debtor]; (ii) …; (iii) …; (iv) …; (v) all obligations of the type referred to in clauses (i) through (iv) above of other Persons for the payment of which the [Debtor] is responsible or liable as obligor, guarantor or otherwise; and (vi) all obligations of the type referred to in clauses (i) through (v) above of other Persons secured by any lien on any property or asset of the [Debtor] (whether or not such obligation is assumed by the [Debtor]), whether incurred on or prior to the date of this Indenture or thereafter incurred, *unless … it is provided in the instrument creating or evidencing the same or pursuant to which the same is outstanding, that such obligations are not superior or are pari passu in right of payment to the Debt Securities* ….

(Doc. 1 at 352-53 (emphasis added)). The parties agree that the Note fits within category (i).

The Note provides as follows:

> The indebtedness evidenced hereby, including the principal and interest on this Note, shall be subordinate to the [Debtor's] indebtedness arising in connection with the junior subordinated debt securities issued in connection with that certain Trust Preferred Securities Transaction in the amount of $7,250,000 dated December 22, 2006.

(Doc. 1 at 535). That is, the Note expressly and unambiguously provides that the indebtedness it reflects is subordinate to the Debt Securities. Thus, and as the appellant concedes, if the "unless" clause applies to category (i), the Note cannot

4

possibly constitute Senior Indebtedness to which the Debt Securities are subordinated.

The appellant, however, does not concede that the "unless" clause applies to category (i). He notes that each of the first five categories of Senior Indebtedness concludes with a semicolon which, he says, constitutes them as "separate independent elements," such that nothing following each semicolon can apply to anything preceding the semicolon. Thus, he concludes, the "unless" clause can modify only the sixth category. (Doc. 7 at 22).[5]

The appellees argue, and the Bankruptcy Judge concluded, that the definition of Senior Indebtedness unambiguously extends the "unless" clause to all six categories. (Doc. 1 at 734-35). The Court agrees.

The "unless" clause is preceded by two clauses introduced by "whether." The first of the "whether" clauses is a parenthetical that cannot possibly apply to any category but the sixth because it expressly addresses only the situation presented by that category. If the second "whether" clause ("whether incurred on or prior to the date of this Indenture or thereafter incurred") were likewise limited to the sixth category, it would have been included in the parenthetical rather than being separated from the parenthetical by a comma. The second "whether" clause, therefore, plainly applies to all six categories. That this is so is emphasized by the subordination provision itself, which repeats that payment on the Debt Securities is subordinated to "all" Senior Indebtedness (thus including all six categories) regardless of whether such indebtedness is "outstanding at the date of this Indenture or thereafter incurred." (Doc. 1 at 404).

Because the second "whether" clause applies to all six categories of Senior Indebtedness, the "unless" clause that follows it necessarily must also apply to all six categories. Certainly the appellant has offered no scenario whereby the scope

---

[5] The appellant speaks of the fifth category, but he clearly intends the sixth.

5

of the definitional provision, once having shifted from the sixth category to all categories, could shift back sub silentio to the sixth category only.

Nothing in the nature of a semicolon undermines this analysis. Far from being the impermeable barrier for which the appellant contends, material following a semicolon may apply to material preceding the semicolon. Thus, in *Dunkin' Donuts of America, Inc. v. Minerva, Inc.*, 958 F.2d 1566 (11th Cir. 1992), the Court agreed with the trial judge that "the language after the semicolon simply qualifies and expands on the preceding clause in accord with general rules of grammatical construction." *Id*. at 1573.

The appellant's own authority describes a semicolon as a punctuation mark "used to connect independent clauses and indicating a closer relationship between the clauses than a period does." American Heritage Dictionary of the English Language 1592 (5th ed. 2011). Semicolons are commonly used to separate items on a list, *Payless Shoesource, Inc. v. Travelers Companies, Inc*., 585 F.3d 1366, 1370 (10th Cir. 2009), as was done in this case. Once the list is complete, the use of semicolons to separate items on the list does not preclude subsequent clauses of the same sentence from applying to each member of the list. That is precisely the effect of the "unless" clause and the second "whether" clause.

In summary, the Bankruptcy Judge did not err in ruling that the Indenture unambiguously prevents the Note from being Senior Indebtedness.

## II. The Note Precludes the Appellant from Receiving Any Payment Before the Appellees' Debt Is Satisfied in Full.

Subordination agreements may provide for lien subordination or for debt subordination. The Bankruptcy Judge concluded that the Note provides for debt subordination. (Doc. 1 at 736). This is patently correct, since the Note explicitly provides that "the indebtedness evidenced hereby … shall be subordinate." (*Id*. at 735). The appellant does not disagree.

The Bankruptcy Judge concluded that debt subordination "entitles the senior creditor to full satisfaction of its superior debt before the subordinated creditor receives payment on its debt." (Doc. 1 at 736). Because the Note provides for debt subordination, the Bankruptcy Judge concluded that the appellant unambiguously "agreed that he would not accept payment under the Note before holders of the Debt Securities were paid in full." (*Id*.). With this conclusion, the appellant does disagree.

According to the appellant, debt subordination does not entitle the senior creditor to full satisfaction before the junior creditor receives any payment unless the relevant documents expressly say so. (Doc. 7 at 30, 32-33). It is true, as the appellant stresses, that the subordination provisions in *Highland Park CDO I Grantor Trust, Series A v. Wells Fargo Bank*, 2009 WL 1834596 (S.D.N.Y. 2009) and *New York Stock Exchange v. Pickard & Co.*, 296 A.2d 143 (Del. Ch. 1972), happened to expressly acknowledge that the subordinated creditor would receive no payment until the debtor's obligation to the senior creditor was fully satisfied. But it is also true that these opinions did not state or even suggest that this language is indispensable.

The *Pickard* Court, as well as the Bankruptcy Judge and all parties herein, have cited to a secondary authority. *See* Dee Martin Calligar, Subordination Agreements, 70 Yale L.J. 376 (1961) ("Calligar"). The author makes clear that, unless the subordination provision expressly creates exceptions, debt subordination precludes the subordinated creditor from receiving payments before the senior creditor is satisfied, regardless of whether the agreement expressly so states.

Subordination may be "inchoate" or "complete." An inchoate subordination is triggered only if the debtor manifests some specified level of financial distress, while complete subordination is activated from the outset. Calligar at 377-78. Under both types, "upon the distribution of the assets of the debtor, the senior debt must be paid in full before any payment is made on the

subordinated debt ….*" Id*. at 378.  Either type can be created by an agreement that "simply states that 'debt A is hereby subordinated to debt B.'" *Id*. at 382-83. More detailed language is needed only to:  (1) clarify whether the subordination is inchoate or complete, *id*.; or (2) to limit the scope of the subordination.  *Id*. at 378, 382.  "Variations on the complete subordination may be obtained by merely limiting payment on the subordinated debt to a specified amount until the senior debt is retired, rather than prohibiting such payments entirely." *Id*. at 378. Similarly, an agreement may "permit the payment of interest on the subordinated debt so long as the borrower is not in default under any of the senior debt instruments." *Id*. at 382.  In short, "[v]arious exemptions may be carved out from the subordination." *Id*.  Thus, a simple statement of subordination requires that the superior debt be fully satisfied before any payments are made on the subordinated debt, subject only to whatever exceptions the subordination provision expressly sets forth.

The appellant has provided no authority supporting the proposition that a debt subordination provision does not preclude the subordinated creditor from receiving payment before the senior creditor is satisfied unless the provision expressly says so.  The Court agrees with the Bankruptcy Judge that the Note unambiguously precludes the appellant from receiving any payment before the appellees' indebtedness is fully satisfied.

**III. The Note and Mortgage Do Not Alter the Priority Established Above.**

The appellant concedes it is "true" that the appellees' claims "must be satisfied in full prior to any distributions being made on the Pilot Note," but only with respect to payments made directly by the Debtor.  (Doc. 10 at 7).  He argues that the Note and Mortgage leave him free to collect on the proceeds of his collateral held in the liquidating trust because such proceeds are from property of the Bank (the Debtor's wholly-owned subsidiary) and not from the Debtor

8

directly. (*Id*.). His argument is essentially that, because neither the Note nor the Mortgage expressly states otherwise, he may satisfy his indebtedness ahead of the appellees even though his indebtedness is expressly made subordinate to theirs, and even though such debt subordination means the appellees must be paid first. (Doc. 7 at 23-26). This might fairly be labeled the appellant's "I lost the race but I get the trophy anyway" argument.

A mortgage is but a means to secure the ultimate collection of an underlying indebtedness. *E.g., Cook v. Benton*, 3 So. 2d 877, 880 (Ala. 1948) ("The real test of whether a transaction is a mortgage is whether or not it was made to secure a debt. If the transaction was entered into for the purpose of securing a debt it is a mortgage ...."); *accord* Black's Law Dictionary 1101 (9th ed. 2009).[6] The Mortgage serves only this purpose. As the Note says, "[t]he indebtedness evidenced hereby is secured by the Accommodation Mortgage executed by [the appellant] and [the Bank] on or about the date hereof." (Doc. 1 at 535). The Mortgage echoes that its purpose is "to secure the prompt payment of" the appellant's loan to the Debtor. (*Id*. at 543).

Since the Mortgage is not an independent obligation but merely serves to secure the indebtedness reflected by the Note, on what principle may the appellant use the Mortgage to collect the indebtedness at a time and under circumstances when the Note unambiguously states he is *not* entitled to collect the indebtedness? So phrased, the question would appear to answer itself, but the appellant gamely presses on. Silence, he says, is golden. Because the Note does not expressly forbid him to use the Mortgage to collect the indebtedness ahead of the appellees, he may do so. Similarly, since the Mortgage provides a foreclosure remedy without limiting when it may be employed, he may collect on the collateral at his pleasure.

---

[6] The Note and Mortgage are governed by Alabama law.

9

As to the Note, the appellant's argument is essentially that his agreement that the appellees will be paid before him means only that they will be paid before him unless he gets to the money first. But the Note is absolute by its terms and cannot possibly support the existence of unmentioned exceptions. As noted in Part II, "[v]arious exemptions may be carved out from the subordination," Calligar at 382, but this requires language adequate to accomplish the carving. The Note contains no limiting language and thus does not preserve to the appellant any right to the collateral or its proceeds before the appellees' indebtedness is satisfied.

As to the Mortgage, it cannot be read in isolation from the Note. "Two or more instruments executed contemporaneously by the same parties in reference to the same subject matter constitute one contract, and should be read together in construing the contract." *Lloyd Noland Foundation, Inc. v. City of Fairfield Healthcare Authority*, 837 So. 2d 253, 267 (Ala. 2002) (internal quotes omitted).[7] Because the Note unambiguously makes the appellant's indebtedness subordinate to the appellees', it unambiguously precludes the appellant from collecting the indebtedness ahead of the appellees by any means, including via the Mortgage. Because the Mortgage is part of the same transaction between the same parties, and because a mortgage is by definition limited to a means of securing payment of the underlying indebtedness, the Mortgage cannot be used to collect the indebtedness in violation of the Note.

The appellant points to a few cases from other jurisdictions in which a subordination provision under review happened to refer to a mortgage. (Doc. 7 at 24-25). According to the appellant, these references to a mortgage prove that such a reference must be necessary in order to limit a subordinated creditor's recourse

---

[7] The Note was executed by the Debtor in favor of the appellant, and the Mortgage was executed by the Debtor and the Bank in favor of the appellant on the same day as part of the same transaction. (Doc. 1 at 533, 536, 542, 554). The appellees invoke the rule invoked in text, (Doc. 9 at 22), and the appellant has not challenged its applicability. On the contrary, the appellant identifies all three as "the parties to the loan agreement." (Doc. 7 at 27).

10

under its mortgage, or else the subordination agreements would not have made such references. (Doc. 10 at 6). But lawyers and contracting parties frequently employ more words than are necessary to accomplish the task at hand, usually in an abundance of caution, and their doing so scarcely establishes a mandatory minimum standard of specificity. Notably, none of the cases to which the appellant cites actually states or even suggests the proposition for which he contends.

In summary, the Bankruptcy Judge did not err in ruling that the Note and Mortgage do not alter the priority established by the Note and Indenture.

## IV. Extrinsic Evidence of the Parties' Intentions Is Inadmissible.

The appellant presented his affidavit and that of a Bank and Debtor representative for the proposition that all three parties understood and intended that the appellant would be able to pursue his remedies under the Mortgage regardless of the subordination provision in the Note. The appellant complains that the Bankruptcy Judge did not consider this evidence. (Doc. 7 at 27-28).

Extrinsic evidence is admissible only if the language used is ambiguous. *E.g., Drummond Co. v. Walter Industries, Inc.*, 962 So. 2d 753, 780 (Ala. 2006). Because, as discussed in Parts II and III, there is no ambiguity in the Note, and because the Mortgage must be read consistently with the Note, the Bankruptcy Judge properly ignored the appellant's extrinsic evidence of what the contracting parties may have subjectively intended but failed to express in the Note.

## V. The Appellees Are Entitled to Priority as Third-Party Beneficiaries of the Note.

The appellant concedes that the appellees are intended third-party beneficiaries of the subordination provision, but he stresses that their rights in that capacity are "subject to the limitations of the language of the subordination agreement as discussed" in the preceding sections. (Doc. 7 at 28). As noted in

Parts I-III, that language is absolute and so poses no barrier to the appellees' prevailing as third-party beneficiaries.

### VI. The Intercreditor Agreement Does Not Change the Priority of the Appellant's Claim.

To accomplish the sale of the Bank, the appellant was required to release his Mortgage against the Bank's realty. To accomplish this while preserving the status quo, the appellant, the Debtor and Alesco entered an Intercreditor Agreement. This document provided that the appellant would release the Mortgage but that, upon sale of the Bank, "the lien of the Mortgage shall attach to the sale proceeds attributable to the Real Estate Collateral and such sale proceeds as assets of the [Debtor's] bankruptcy estate shall replace, and shall be attributable to the sale of, the Real Estate Collateral." It was further "acknowledged that the consensual release of the Mortgage discussed in (i) above shall not be deemed or construed to prejudice [the appellant's] rights in respect of the Pilot Claim, and the Bankruptcy Court shall determine [the appellant's] and [Alesco's] respective rights to the proceeds of the sale as if the Mortgage remained in full force and effect." (Doc. 1 at 558-59).

The appellant, after highlighting the quoted language, asserts that, "[i]f the Accommodation Mortgage lien attaches to the sale proceeds, and the [appellees] have no lien on the sale proceeds, then [the appellant] is entitled to payment of the debt secured by the attaching mortgage." (Doc. 7 at 29). His brief does not explain this opaque conclusion, but his problem remains the same. His indebtedness is subordinated to that of the appellees, which means they receive payment first, and the mere fact he has a lien on the proceeds of the collateral means no more than does the mere fact he had a mortgage on the collateral from which the proceeds were derived; a subordinated secured debt is still a subordinated debt. That the Intercreditor Agreement expressly provides that priority will be determined "as if the Mortgage remained in full force and effect"

simply underscores that the agreement cannot place the appellant in a more favorable position than he occupied as holder of the Mortgage.

In summary, the Bankruptcy Judge did not err in finding that the Intercreditor Agreement does not alter the priority of the appellant's claim.

**CONCLUSION**

For the reasons set forth above and in the Bankruptcy Judge's order, her grant of summary judgment to the appellees and denial of summary judgment to the appellant is **affirmed**.

DONE and ORDERED this 13th day of May, 2014.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE